May it please the Court, I'm David Jacoby, I'm here for the Appellant Executive Risk Indemnity, and if I may, I'd like to reserve three minutes of rebuttal, please. Alright, watch your clock. It winds down. And it's in the red, you're done. I understand, Your Honor. Virginia Mason took money from its patients for what it called hospital facilities charges, and this meant that if a simple procedure was performed at the downtown location of Virginia Mason, it might cost a thousand dollars more than it would a mile or two away at a satellite facility. A class of Virginia Mason patients alleged that they were not given prior disclosure of these charges, and that if they had, they wouldn't have gone downtown, they would have gotten their medical care somewhere else. Members of the class were out of pocket for the portion of those charges that was not paid for by their insurance. They sued Virginia Mason. Virginia Mason tried to get out on summary judgment. It didn't. Shortly after that, it essentially confessed judgment for, very simple, whatever those class members paid to Virginia Mason, Virginia Mason gave back for those disputed charges. That was a part of a settlement, wasn't it? That was part of a settlement. That was also all that, at that point in the litigation, those class plaintiffs were seeking. They got the relief that they asked for. If you look at S.E.R. 243... The two players, isn't that correct? Part of a settlement. It is the settlement. Okay. It is also reduced to judgment. As to the settlement, it was reduced to judgment because that was the settlement, but there was a settlement of that. In fact, in the underlying action, as to what they did in particular, as to one of the causes of action, it was found to be okay, wasn't it? That's right. The court found that it was legal, was not inherently illegal, to impose those charges, but if they were imposed... I guess whether your client was defending, now they would say not inherently illegal, but I would have said something quite different if I'd have got that judgment. Your Honor, it's like the situation, for example, perfectly legal to sell your stock. It's not legal to sell your stock by making material misrepresentations about it. It's perfectly legal to obtain commissions if you're a stockbroker. It's not legal to obtain those commissions if you do it in an unfair and deceptive manner. Under Washington law, the obtaining of those payments in an unfair and deceptive manner is illegal under the Washington Consumer Protection Act. What did the plaintiffs seek against VM? What was the underlying complaint? What did they seek against VM? Well, the complaint... Did they seek restitution? The complaint said compensatory damages. Right. The ultimate payment... Did they seek disgorgement of gain? It didn't say disgorgement of gain. Did they seek unjust enrichment? It didn't ask for unjust enrichment, but Your Honor, if I may... But what did they seek then? They sought compensatory damages. Yes, but Your Honor, this court has said that it's what actually is recovered. It's the actual nature of the claim and the payment. It is not the labels that go on it. And what this court said in Unified Western Grocers, the label of restitution or damages doesn't dictate whether a loss is insurable. The fundamental distinction is not whether the insured received some benefit from a wrongful act, but whether the claim seeks to recover only the money or property that the insured wrongfully acquired. Now that is all that happened here. And the reason this is significant, Your Honor, is we don't go back to the complaint. This is a reimbursement policy. Coverage is determined at the end of the day. And it's determined based on the claim or claims that remained in the case. It's determined based on the record in the underlying case. It's determined based on what was recited in the judgment that effectuated the settlement between the parties. And at that point in the case... Yes, it also is determined on the language of your policy, which you've left out. And your policy suggests that any damages or settlements which an insured is obligated to pay as a result of any claim, including, but not limited to, punitive or exemplary damages incurred in civil proceedings were insurable under the law, and any defense expenses which an insured is obligated to pay. So what I'm really asked to do, it seems to me, is take settlements and write it out of there and say, because it's a settlement which was enacted by coming up with an imaginative way to settle the lawsuit, and it just so happens that they only settled paying the particular claimants their portion, not any other insurance companies their portions, but just those claimants their portion. They come up with a settlement amount that I'm to write settlement out of that. Well, I don't think writing settlement out of that is what you have to do, Your Honor. There are a few answers to that issue. The first one is what the Conseco Court said. Merely because settlements are included in the definition of loss doesn't mean every settlement the insured is ever involved in is covered. The definition of loss can't be read to ignore the word loss itself. And under Level 3, under Bank of the West, under Conseco, under Seaboard Surety, under Unified Western Grocers, Pan Pacific, the cases go on and on and on. They all say that where all that happens is the insured obtains money from the plaintiffs and gives that money back because it was allegedly taken wrongfully, you do not have a loss. We're talking now about the loss definition, the grant of coverage. We are not talking about the exclusion, so you don't have the issue there. You're trying, and you did in your brief too, to incorporate the ordinary meaning of the word loss when in fact your policy specifically defines loss to include a settlement here. Well, it defines loss to include a settlement, but again, as the Conseco Court said, as Level 3 said, that doesn't mean every settlement. This same language that even if I were to agree with you, it's appropriate to go beyond the policy language in this circumstance. I think it's quite, there's a valid argument that the medical center did suffer a loss because there is a finding that it was entitled to charge the increased cost given that it was located, not freestanding, but as part of a hospital and so things are more expensive there. And there was never any proof that their disclosure was in fact improper because it was settled. Well, Your Honor, in fact there was proof. Judge Peckman says that in her decision, but it's really not quite right. There was in the record, both below and in the coverage action, substantial evidence. There might be evidence, and you might be arguing from evidence, but there's no adjudication or finding by anyone that the disclosure was improper. No, there was no final adjudication, but a final adjudication, that's not required for the claim and the payment made on the claim. And it was a settlement, so that's why you didn't get to the final adjudication. That's right, Your Honor, but it's the nature of the claim and the nature of the payment and not culpability that determines whether what you're talking about is a covered loss. Let me ask you this, counsel. Did you ever argue to Judge Peckman that this contract was ambiguous? That the contract, which we are now interpreting here, was ambiguous? That the insurance policy was ambiguous? No. So you argue that it was clear and unambiguous. It's clear and unambiguous. Okay, but you want us to take into account evidence outside of the contractual language in order to try to deal with this? No, I don't think it's evidence outside the contractual language, Your Honor. It's decisions from many, many jurisdictions that have said that's what this very language means. I can understand the decisions, but what you're really now suggesting is that what we need to do is we need to guess why the settlement came to the particular matter. It's not unclear, based generally, but we need to guess as well why the VM would settle for that when they might have had a pretty good claim and they didn't pay everybody else. They only paid the claimants, got out from it for a lot less than they may have had to pay. Well, they paid every, they paid every patient who had personally incurred a facilities charge. They wrote off every other claimant who had incurred a facilities charge but hadn't paid it yet, and they agreed going forward to properly disclose these charges before they were incurred. The plaintiffs, the way the plaintiffs put it was, we got everything here that we asked for. In other words, had they gone to trial, at the end of the day, the judgment would have been the same. So it's difficult to say that this was merely a settlement, but that, Your Honor, is not really the issue in determining whether it's a loss or not, because if you read Pan Pacific 471 F. 3rd at 968, the court says, regardless of whether Pan Pacific, the insured, actually breached a duty or committed a wrongful act, if it made a payment to settle a claim that sought the return of wrongfully acquired property as defined in California law, the payment would not be insurable. That's the point here as to whether it's a loss. But even if it is a loss... California law, I haven't seen that quite in Washington. Well, you know it's interesting, Your Honor, because the California law is from Bank of the West, and if you look at Bank of the West at 833 P. 2nd, I believe it's at 547, the court states it's holding, and then it says, this was the reasoning of the court that first addressed the issue now before us. Seaboard Charity Company v. Ralph Williams, 504 P. 2nd, 1139. It's a Washington case. Deciding... Why didn't you cite that case in its language? That case is... Because I looked right at that case. No, that case is cited in a brief, I believe. Well, but you didn't cite the language out of it, because it doesn't help you quite as good as that California case. Well, I think the California case is reading the case certainly for all it's worth, but what it says is, when the only thing that is at issue is the return of the plaintiff's property, you don't have covered damages. And the other cases say damages is actually a broader term than loss. Loss is a narrower term. There's a reason why every single court, but the district court in this case, that has ever been asked whether the mere refund or write-off or rescission of a deal is covered loss. Under this very same language, a lot of these cases, Your Honor, involve executive risk policies with the same definition of loss. The Hawaii case, they all have concluded that it's not covered. That's the Pacific Educational Services case in Hawaii, Level 3 involved a federal ERII policy. This is the same language that's used in all these cases, and the courts have gone the same way under Nebraska law, California law, Alaska law, Washington law, Pennsylvania law, Hawaii law, Wisconsin law. There is no case that says this is a loss. But even if it is a loss, is it excluded under Exclusion 3A? And we submit that it is, even though there wasn't a final determination. Now the trial court said there's no evidence in the record that these payments were improperly obtained. That's wrong. There was plenty of evidence in the record that we submitted, and even if the court followed the PMI standard, the in fact standard, and said there either has to be a finding of fact or some evidence beyond the allegations of the complaint. Three minutes. You're down to one minute and almost a half. Thank you. I'll reserve that time. Thank you. May it please the Court, I'm Frank Cordell of Gordon, Tilden, Thomas & Cordell. I'm pleased to be joined here today by my partner, Mark Willner, representing Virginia Mason Medical Center in this insurance coverage dispute. I'd like to start by addressing an issue that frankly gets short shrift in both the appellant's brief and did not come up in his argument, but it's an important issue to Virginia Mason because first it's a half-million dollar issue. Second, it's a freestanding issue. It's independent even of the larger indemnity dispute here about the settlement payment made to the Gibson class action plaintiffs. And lastly, we believe that the executive risk treatment of this issue is emblematic of the Yes, indeed, the defense cost issue. The defense cost is, they advance the cost of defense and they want it returned? Small factual details, they advance about a hundred and fifty thousand dollars and then they stop paying defense so they are seeking back that hundred and fifty or so thousand dollars that they advanced and we are seeking affirmatively and we got a judgment for the remaining four hundred or so thousand dollars that they incurred but they didn't advance. So the district court awarded you the remaining cost of defense? Correct. Alright, and then did the district court also award you your attorney's fees and costs? Yes, and we would suggest Judge Wardlaw that those issues go hand-in-hand with again completely independent of the Gibson settlement payments that were entitled to an affirmance regardless on the defense cost judgment, the pre-judgment interest going with those defense costs, and the entire Olympic steamship fee award. Briefly, the policy sets a very clear rule for when defense costs are owed and when defense costs can be recouped by executive risk. The exclusion 3A2 says that defense costs are recoupable and only if underwriter, that's executive risk, has no liability to and insured for loss. That means if there's any liability for loss, the full defense costs are owed. In this case, there's two independent categories of loss that were paid. One, it is really virtually undisputed or it is the fact is undisputed that when Virginia Mason settled the Gibson class action, part of that settlement was paying eight hundred thousand dollars in the class in the Gibson plaintiff's class counsel fees. Under any standard, even the most aggressive standard advanced by executive risk on the indemnity part, executive risk has conceded as they must that new money paid by an insured in the form of counsel fees or if there were a lost profits claim, that kind of thing. New money is covered loss under the policy. Executive risk not only conceded that point in two letters written by its lawyer claim handler and those are at excerpt of record 162 and 164, they not only unequivocally conceded that that fee component of the underlying settlement was covered loss, they demonstrated that by their deeds which is by their deed which is cutting a check for eight hundred thousand dollars to Virginia Mason. So we would suggest, Your Honors, that there is no substantial issue, there's no reason to that we can't, that we should not be affirmed particularly on the defense cost component of the settlement and again then the full Olympic Steamship component of the settlement including our Olympic Steamship fees on this appeal. Shifting to the Gibson settlement payments about 1.2 million dollars, I think the questioning has elicited some of the main points that we think are very important about that settlement agreement and how those settlement payments unfold against the insurance law backdrop here. First, it is absolutely undisputed and my friend Mr. Jacoby has conceded that those facilities charges are expressly permitted by federal law. It's not even a question of they're silent. They are affirmatively permitted and contemplated by federal law. I think it's important without belaboring it to make clear precisely what these charges are. This is not some sort of amorphous fee that you see when you check out of your hotel and there's a resort fee. It's not some sort of amorphous thing like that. This is contemplated by federal law to account for the fact that when you choose to have your minor surgical procedure done at the hospital campus, you're getting a lot more services. If something goes horribly wrong, for example, you've got an emergency room and all that infrastructure right there and because you're at a hospital, the hospitals have to comply with a myriad of federal regulations that increase the hospital's cost. As the record and the declaration of Mr. Sinestra from Virginia Mason in the record outlines, both these fees are fully legal, they're used for real-world services performed by the hospital, and they're an important stream of income for the hospital that the hospital obviously they were sued in the Gibson case. They were sued initially for two causes of action. One, the differential pricing claim saying these fees are fundamentally illegal and two, the Washington Consumer Protection Act claim, the deception misrepresentation omission claim. As has come out in the questioning, the differential pricing claim was basically dismissed and then conceded to be without merit by the plaintiffs. So what we were left with was this hotly contested issue in the underlying case as to whether, in fact, the disclosures by Virginia Mason of these facilities charges were adequate or inadequate, etc. Again, hotly contested in the underlying case. Our briefs recite the evidence that Virginia Mason relied on suggesting that they had fully disclosed these charges consistent with federal law. One thing we'd like to point out, we thought it was important to Judge Beckman, and we think it's important as well, that the ensuring agreement of this policy, that is, the affirmative grant of coverage explicitly covers wrongful acts, and within wrongful acts, omissions, misstatements, and misleading statements are explicitly within the coverage. Again, obviously we have to discuss exclusions, which we'll get to in a minute, but when a reasonable purchaser of insurance reads this policy, that certainly provides a strong foundation for one to think that if Virginia Mason, in collecting a fundamentally legal charge, is sued for arguably having an omission, misstatement, or misleading statement in connection with collecting that fundamentally legal charge, that that loss should be level 3 communications. I think the panel actually noted quite correctly that the word loss is defined in the policy. It's defined extremely broadly. It both includes settlements in litigation, and it does not attempt to include any concept of ill-gotten gains, that kind of thing. We point out in our brief that Washington courts have particularly aggressively applied the rules of insurance policy interpretation, and those rules, frankly, I may have chosen one of the I probably chose the easier of the two sides of this practice, Your Honors, in Washington because we seem to get all the ties in our favor, and that's the Washington courts have applied that very aggressively. That definition of loss, again, contains nothing related to ill-gotten gains, etc., and as we point out in the brief, let's think a little bit about just plain meaning and ordinary usage. We say in the brief, even if we're not dealing with burglars here, but let's say if a thief or a burglar steals money and then loses his wallet on the bus, from the perspective of that person, that's still a loss. We say that only to point out that the English language concept of loss is simpler than executive risk would like to make it. So we think that we very much start with and have a loss here. The question then is whether the case law in other jurisdictions that applies a public policy prohibition on insuring certain types of losses applies here, and we have suggested in the brief that unlike California, unlike Illinois, unlike a couple the other jurisdictions, but principally California, Washington courts have rejected the application of public policy to curtail coverage that's available on the black and white of the policy unless the Washington courts or legislature have convincingly expressed that public policy. That's from the Fluke v. Hartford decision, and incidentally the Fluke v. Hartford decision approves or rejected a public policy challenge to the insurability of punitive damages awarded in California on a wrongful prosecution or malicious prosecution claim. Our point being that even in a case where the elements of the underlying tort assume wrongful intent, that the Washington court declined to curtail coverage for that based on public policy. The last thing I would mention, I think, is that Mr. Jacoby suggested that we settled for full value in the case. We really didn't, and please remember, among other things, that the Washington Consumer Protection Act contemplates treble damages, and we settled avoiding that, so it was by no means a full value settlement. Lastly, I would simply emphasize that, as Judge Smith pointed out, none of the pleadings contain anything like theories of disgorgement or restitution, had they, and had the plaintiff's lawyer decided to encounter the higher, the more difficult, pleading requirements, etc., etc., and the more difficult proof requirements. And you don't look at the pleadings, you look at the settlements and what actually relief was granted. Correct. Judge Piaz, we... It looks like you just returned their money. It's important, Judge Piaz, as we say in the briefs, we believe that the underlying litigants both, they got the labels right, but you're right that the labels don't control. In our view, the real-world function, the real-world events of what was collected by Virginia Mason and what was returned demonstrate that this was not a restitutionary disgorgement argument. The plaintiffs could have, and it would have been much more difficult for them, and that's presumably why they didn't, but they could have sought to have Virginia Mason disgorge every single facility charge collected within a statute of limitations period without regard to whether it had been collected through a health insurer who was aware of the charge and agreed to it. They could have just tried to get all of that back and it would have multiplied the claim damages significantly. What happened instead was only those patients who were not through one of those health insurers that had agreed to pay it on their behalf and those patients who were willing to sign in the settlement procedure, sign a statement saying that they were not adequately informed of the charges, only those plaintiffs got paid back. And that act, in our view, is significant. They had to affirm that they felt they suffered damages by our tortious conduct as opposed to, again, just a disgorgement. Unless the panel has other questions, we'll sit down. Thank you very much. Thank you. Mr. Jacoby. Just a few quick points. First of all, the record contains substantial evidence that these charges were collected in a deceptive manner. It's at ER 166-309. It's the evidence that the plaintiffs themselves submitted in the trial court in the underlying action. Judge Peckman said there was no evidence in the record to support a finding that this was, under Exclusion 3, loss for claims brought about or contributed to in fact by any insured gaining any remuneration to which the insured was not legally entitled. We think that at the very least created a question of fact that had to be resolved before the court could determine whether Exclusion 3a applied or not. So even if this was loss, the question whether the exclusion applies was not properly resolved in the trial court. With respect to the defense costs, if you look at ER 164, ERII was very, very clear about what its position was on defense costs. We said that's loss. The class counsel's fees, that's loss. We're not relying on Exclusion 3a at this time, but we reserve the right to do it in the future. Exclusion 3a says that if it is found that the exclusion applies, and we're invoking the exclusion in this declaratory judgment action, if it's found that the exclusion applies, we have a right to recoup defense costs advance. It says no such thing with respect to any other element of loss. That's why we've sought that, and we haven't sought to recover the payment for class counsel fee that we made. There's been no waiver there. Exclusion still is potentially applicable, and at the very least there's a question of fact about whether it applies or not. So even if there's loss, we think that this case has to go back down. Thank you. Thank you, counsel. Virginia Mason Medical Center v. Executive Risk Indemnity is submitted, and this session of our court is adjourned. Court is dismissed.
judges: Wardlaw, Paez, Smith N. R.